DAVID B. SILVERTHORN and WILLIAM SILVERTHORN, appellants,

v.

WILLIAM D. BRANDS, respondent.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions:

In October, 1881, these parties entered into copartnership to buy and sell apples, cider and buckwheat flour. Just how long the business was carried on does not appear, but I infer that it terminated sometime in December, 1881. In the spring of 1882 they met at the house of William Silverthorn for the purpose of settlement. They did not agree upon a settlement, but agreed to meet at the house of David B. Silverthorn soon afterwards. At that meeting William Silverthorn said to Brands that he had not given him (William Silverthorn) credit with $799.90, which he (William Silverthorn) had paid him. To this Brands made no reply, except to say that he would not settle upon such terms as that. And that ended that attempt.

The parties, upon the witness-stand, and their respective counsel, agree in saying that the only matter in dispute is whether or not William Silverthorn paid the $799.90 to Brands.

The money is traced to the hands of William Silverthorn in this way. Apples were bought at Newfoundland, Pennsylvania. The three partners were all there. A number of barrels were shipped, and William Silverthorn went to sell them. As he was about leaving Brands handed him a check, and asked him to draw the money on it for him. William Silverthorn sold the apples for $799.90. He took a check for that amount. He drew the money on the $400 check. He says that he also drew the money on the $799.90 check, in which he is uncontradicted. He carried the $400 to Newfoundland in two packages of $200 each. It is proved conclusively that he first paid Brands one

of these packages, and turned away from him while Brands counted it, and made an entry in his pocket memorandum book, when he (William Silverthorn) paid Brands the other package, which he counted, and entered in his book. It seems to be established with equal certainty that there was no other money paid at that time. Brands swears to these facts, and Mr. Grimm, who stood by, does also. And Mr. Simon, who was in the same room, but not near enough to the parties to hear what they said, or to witness the counting, swears that the money was paid in two parcels. I think it cannot be contended seriously that any part of the $799.90 was paid at the time the $400 were paid. Indeed, Mr. Silverthorn says that he thinks he paid the $799.90 to Brands the next Tuesday morning.

Now, it is urged as a strange circumstance that Brands should make two separate entries of the $400. This does not seem more strange than that William Silverthorn should make two separate payments of it.

William Silverthorn says that he drew both the $400 and the $799.90 for the purpose of paying them over to Brands. It was intimated that the fact that Brands had made two entries in his book was proof that the two sums had been paid, that is, the $400 and the $799.90, but that there had been a false entry. Any such conclusion as to the entry seems to be excluded. For then neither entry represents the $400, and consequently both entries are false, and both were falsely made in the presence of Mr. Grimm, and if not in the immediate presence of William Silverthorn, he was in the same room, and so near by that detection of the false entry was likely to be made at the instant.

It was also urged that William Silverthorn obtained the money, and carried it with him for the purpose of paying it to Brands, and that it was most natural that he should have paid it over to him, as it was understood that he was making the principal payments for the purchases made. That is true, and that consideration has had due weight with me, but it will be seen that it was most natural for him to have paid the $799.90 when he paid the $400, which, we have already shown, he did not do. There is no reason offered for not paying it then. There is nothing to

show that William Silverthorn had any occasion to use it in the business. Indeed, as above stated, he says that he carried it with him to give it to Brands.

The witness Grimm says that when William Silverthorn paid over the $400, he said to Brands that he would be up every two or three days, and would bring him more money. It is urged by counsel of complainant that William Silverthorn would not have made any such remark if he had paid over, or if he intended to pay over at that visit, the $799.90. There is force in this argument.

When I come to apply the ordinary tests, the case seems to be against William Silverthorn. Of course the burden is on the complainant in the first instance; but having shown, as in this case, that the defendant had the possession of moneys in dispute, then the burden is shifted to that defendant to show a payment. He has not, by a preponderance of testimony, shown such payment. He says that he paid it to Brands, and thinks that he paid it on a Tuesday. In this Brands contradicts him, and there is no circumstance of any kind sufficient to overcome his denial. This guide, *i. e.*, that when all the testimony, including distinct facts and collateral circumstances, is marshaled and points in one direction, is universally acknowledged in such controversies. Hence, considering the burden upon Mr. Silverthorn, I cannot say that he has made out his case and shown a payment of the $799.90.

It is insisted that, because Brands did not claim that the $799.90 had not been paid at the second meeting for a settlement, he must have had the money. It is quite clear that he at once refused to settle on that basis. I cannot but remark that I am unable to understand why it was that William Silverthorn did not insist at the first attempt at settlement that he had made such payment. He swears that he made the payment and entered it in his book at the time. This being so, it seems incredible that they should worry over their account for several hours with the amount of this one item only unsettled without William Silverthorn seeing that he had charged it against Brands and without also seeing that Brands had not given (William Silverthorn)

45

credit for it alongside of the $400. This perhaps does not determine the rights of the parties, but it does render more uncertain the claim of Mr. Silverthorn. There are but a few entries in his little pocket memorandum book and all of those on one page. He could not help seeing, at a glance, this entry, and I think every one, unbiased, would ask why did he not say, at the first meeting for a settlement, that the $799.90 had been paid.

As above intimated, upon the whole case, the weight of testimony is with the complainant. I shall advise accordingly.

*Mr. Henry S. Harris*, for appellants.

*Mr. L. De Witt Taylor*, for respondent.

PER CURIAM.

This decree unanimously affirmed, for the reasons given by the vice-chancellor.